**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JEFFREY VINCENT GUELI,**

**Plaintiff,**

**vs.** **Case No. 8:06CV-1080-T-27MSS**

**THE UNITED STATES OF AMERICA, et al.,**

**Defendants.**
_______________________________________/

# ORDER

**BEFORE THE COURT** are: (1) a Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant United States of America and Defendant George W. Bush (Dkt. 39), to which Plaintiff has responded in opposition (Dkt. 44); (2) a Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant the State of Florida (Dkt. 45), to which Plaintiff has responded in opposition (Dkt. 52); (3) a Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant Earl Wilson Moreland, Jr. (Dkt. 54), to which Plaintiff has responded in opposition (Dkt. 55); a Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant John Ellis Bush (Dkt. 62), to which Plaintiff has responded in opposition (Dkt. 63). Upon consideration, these motions are granted.

## Background

Plaintiff, a former assistant state attorney for the Twelfth Judicial District of Florida, commenced the instant action on June 8, 2006 (Dkt. 1), suing The United States of America, George W. Bush ("President Bush"), the State of Florida, John Ellis Bush ("Governor Bush"), and Earl

Wilson Moreland, Jr. ("Moreland"), the State Attorney for the Twelfth Judicial Circuit of Florida. (Dkt. 1, ¶¶ 3-7). Plaintiff filed an amended complaint on July 13, 2006 (Dkt. 11), and he filed a second amended complaint ("the Complaint") with leave of the Court on August 21, 2006 (Dkt. 36).

Plaintiff alleges that he began working as an assistant state attorney for the Twelfth Judicial Circuit of Florida on September 22, 2005. (Dkt. 36 ¶ 9). During this time, Plaintiff "worked under" Moreland. (Dkt. 36 ¶ 10). In March 2006, Plaintiff alleges that he filed criminal charges against a teacher who viciously battered a young child. (Dkt. 36 ¶ 11). Plaintiff spoke to the *Manatee Herald-Tribune* about the filing of the charges, and the paper published an article on March 18, 2006. (Dkt. 36 ¶¶ 12-13). Plaintiff alleges that on March 22, 2006, unidentified supervisors at the State Attorney's Office "chastised and threatened" him for filing the charges and speaking to the press. (Dkt. 36 ¶ 14). The following day, Plaintiff resigned from the State Attorney's Office. (Dkt. 36 ¶ 15). Plaintiff alleges that since that time, the Defendants have conspired against him in various ways:

> On March 27, 2006, the Plaintiff sent a letter to the Associated Press describing his resignation. (Dkt. 36 ¶ 16). Plaintiff alleges that the USPS website indicated that the letter had arrived in Sarasota, that the website later indicated that no record of the letter existed, and that the website then showed that the letter was received by the AP on March 29, 2006. (Dkt. 36 ¶¶ 17, 18, 29).
>
> In April 2006, with the intention of starting his own law practice, Plaintiff placed an ad in the *Weekly Planet*, but received no telephone calls. (Dkt. 36 ¶ 19).
>
> On April 13, 2006, the State Attorney's Office dropped the criminal charge pending against the teacher. (Dkt. 36 ¶ 21).
>
> In May 2006, everyone Plaintiff encountered, including family and friends, began acting very strangely around him, his motorist distress calls to the Florida Highway Patrol were ignored, the beverages he ordered in restaurants were laced with narcotics, one of his flights was delayed, and several items went missing from his apartment, despite the fact that there were no signs of forced entry. (Dkt. 36 ¶¶ 24, 26, 27).

Various news agencies ignored Plaintiff's letters and phone calls about his story (Dkt. 36 ¶¶ 20, 22, 26, 31, 45).

On June 19, 2006, Plaintiff was arrested for driving under the influence and confined alone for several hours with no food or water. (Dkt. 36 ¶ 37). Plaintiff alleges that another former state attorney, Mr. Smiley, was also falsely arrested for drunk driving. (Dkt. 36 ¶¶ 15, 23, 32).

The Governor has not contacted him about his letter detailing the reasons why Defendant Moreland should be fired (Dkt. 36 ¶ 38); the CIA has not contacted him about the résumé he provided it (¶ 39); the FBI has not contacted him about the murder conspiracy against him that he reported; (¶ 40); and the Longboat Key Police Department has not contacted him about his desire to make a statement regarding police misconduct (¶ 41).

Based on these allegations, Plaintiff attempts to bring three claims alleging that Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (Count I); the First Amendment to the United States Constitution (Count II);[1] and for injunctive relief (Count III). (Dkt. 36 ¶¶ 62-65). Defendants argue that Plaintiff has failed to effect proper service, that Plaintiff's claims are barred by governmental immunities, and that, in any event, Plaintiff fails to state claims upon which relief can be granted.

***Standard***

A court may grant a motion to dismiss "only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004) (internal quotation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The threshold is

[1] The Court construes Plaintiff's "Denial of the Right to Free Speech Claim" (Count II) as brought pursuant to 42 U.S.C. § 1983. Although the claim does not invoke § 1983, Plaintiff does mention §1983 in the preamble to his Second Amended Complaint. (Dkt. 36 at 1).

"exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Rule 8 of the Federal Rules of Civil Procedure requires only that Plaintiff provide a short and plain statement of the claim showing that he is entitled to relief. A plaintiff is not required to "allege a specific fact to cover every element or allege with precision each element of a claim." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, conclusory allegations and unsupported conclusions of fact are not sufficient to withstand a dismissal under Rule 12(b)(6). *Jackson v. Bellsouth Telcomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004).

## *Discussion*

### *1. United States*

The United States argues that the Court is without subject matter jurisdiction over Plaintiff's § 1983 and RICO claims.[2] The doctrine of sovereign immunity bars suit against the United States except to the extent that it consents to be sued. *Means v. U.S.*, 176 F.3d 1376, 1378 (11th Cir. 1999). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192 (1996). Plaintiff's Complaint fails to suggest any consent to suit or waiver of sovereign immunity to establish jurisdiction in this Court. *See also Jenkins v. Clerk of Court, U.S. Dist. Court, Southern Dist. of Fla.*, 150 Fed. Appx. 988, 989 (11th Cir. 2005) (holding that § 1983 does not provide a cause of action against the federal government or federal officials); *Bernard v. Calejo*, 17 F. Supp. 2d 1311, 1314 (S.D.Fla. 1998) (same); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (holding that there can be no RICO claim against the federal government). Accordingly, Plaintiff's claims against the

---

[2] The United States does not challenge the sufficiency of service of process in the instant motion.

United States are dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.[3]

### 2. *President Bush*

Plaintiff has sued President Bush in his individual capacity and in his official capacity. Plaintiff's claim against President Bush in his official capacity is evaluated as a claim against the United States and is dismissed for the reasons set forth above. The United States contends that President Bush has not been served in his individual capacity (Dkt. 39 at 1, n.1), which Plaintiff concedes (Dkt. 44 at 3).

A plaintiff has the burden of proving that service has been properly effected. *Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986); *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139-40 (5th Cir. 1980). Rule 4(i) of the Federal Rules of Civil Procedure provides that service on an officer of the United States sued in his individual capacity is effected by serving the United States, which has occurred in this case, and by serving the officer as an individual under the applicable rule, which Plaintiff concedes has not occurred.

"Statutes governing service of process are to be strictly construed to insure that a defendant receives notice of the proceedings." *Martin v. Salvatierra*, 233 F.R.D. 630, 631 (S.D.Fla. 2005). Rule 4(m) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to effect proper service within 120 days of filing of the action, absent a showing of good cause. A dismissal pursuant to Rule 4(m) is in the Court's discretion, with consideration of various

---

[3] To the extent that Plaintiff now argues in his memorandum in opposition that the United States' references to RICO are a "red herring" and that he is actually suing under the Federal Tort Claims Act (Dkt. 44 at 4), Plaintiff is advised that he has not currently pled an FTCA claim. Plaintiff's Complaint also contains no substantive allegations against "the United States."

factors, such as whether "the applicable statute of limitations would bar the refiled action, or if the defendant is evading service, or conceals a defect in attempted service." *Horenkamp v. Van Winkle And Co., Inc.*, 402 F.3d 1129, 1132-33 (11th Cir. 2005) (*quoting* Advisory Comm. Notes to Rule 4(m)).

Plaintiff was previously granted an extension to serve President Bush in his individual capacity, and Plaintiff was cautioned that failure to timely effect service would result in dismissal of claims against unserved parties. (Dkt. 60). Although Plaintiff has apparently attempted to secure a waiver of service from President Bush (Dkt. 44 at 3), the President is, of course, under no obligation to agree to a waiver of service. Plaintiff has failed to allege any good cause as to why the action should not be dismissed for his failure to serve President Bush since the action's inception on June 8, 2006. Plaintiff's claim against President Bush is therefore dismissed for failure to effect service. In the alternative, Plaintiff's claims against President Bush are dismissed for the reasons set forth in section 5, *infra*.

### *3. Eleventh Amendment Immunity and the State Defendants*

#### *a. State of Florida*

The Eleventh Amendment to the United States Constitution provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. While the text of the amendment does not explicitly so provide, the Supreme Court has held that the Eleventh Amendment serves as a jurisdictional bar to a suit against a state in federal court unless: (1) the state has explicitly consented to suit; or (2)

Congress has specifically abrogated a state's Eleventh Amendment immunity. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). An assertion of Eleventh Amendment immunity calls into question the Court's subject matter jurisdiction and therefore must be decided before reaching the merits of Plaintiff's case. *Seaborn v. State of Fla., Dep't of Corrs.*, 143 F.3d 1405, 1407 (11th Cir. 1998).

Plaintiff argues that the State has consented to be sued pursuant to § 768.28 of the Florida Statutes, which provides that the State's immunity is waived for tort actions. *See* Fla. Stat. § 768.28 ("the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act"). However, Plaintiff has not alleged any tort claims against the Defendants, nor has he alleged the necessary compliance with the other provisions of § 768.28. In contrast to tort claims under § 768.28, Florida has not waived its immunity to suit for §1983 and RICO claims. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued under §1983); *Bair v. Krug,* 853 F.2d 672, 674-75 (9th Cir.1988) (noting that there is no authority that Congress had overridden Eleventh Amendment immunity in RICO actions). For these reasons, the claims against the State of Florida are dismissed for lack of subject matter jurisdiction and for failure to state a claim.[4]

*b. Official Capacity Claims*

Plaintiff has sued both Governor Bush and State Attorney Moreland in their official, as well as individual, capacities. A suit against a state official in his or her official capacity is a suit against the state itself and is generally prohibited by the Eleventh Amendment. *Will*, 491 U.S. at 71. On

[4] Because the claims are dismissed for lack of subject matter jurisdiction, the Court does not reach the State's argument that it was not properly served process in accordance with Rule 4(j)(2).

the other hand, it is well-established that official-capacity actions for prospective injunctive relief are not treated as actions against the State under the *Ex Parte Young* doctrine. *Id.* (quoting *Kentucky v. Graham,* 473 U.S., at 167, n. 14); *accord Allen v. Moreland,* No. 8:04-cv-2530, 2005 WL 1572734, *2 (M.D.Fla. June 30, 2005) (noting that the State Attorney's office can be considered an "arm of the state," and that *damages* suits under § 1983 are barred by Eleventh Amendment immunity). Plaintiff seeks injunctive relief against Governor Bush and Moreland in Count III of his Complaint. (Dkt. 36, ¶¶ 61-65). Consequently, the Court will assume that the official capacity claims against them are not barred by Eleventh Amendment immunity, to the extent Plaintiff seeks injunctive relief.[5] Furthermore, Eleventh Amendment immunity does not bar damages actions against Governor Bush and Moreland in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Nonetheless, Plaintiff's claims against both Governor Bush and Moreland must be dismissed for the reasons set forth below.

### *4. Governor Bush*

Plaintiff's claims against Governor Bush must be dismissed for Plaintiff's failure to serve process upon the Governor. An official capacity claim against a state official may be effected under the rules for individual capacity suits. *Echevarria-Gonzalez v. Gonzalez-Chapel,* 849 F.2d 24, 28-30 (1st Cir.1988) (holding that Rule 4(e) governed service of suit against state official in his official

[5] Counsel for both Governor Bush and Moreland failed to note the existence or brief the application of *Ex Parte Young* in their respective motions to dismiss. Indeed, Moreland has failed to make any distinction between the official capacity and individual capacity claims against him. As a result, the Court's finding that Plaintiff's claims for injunctive relief are not barred by the Eleventh Amendment may be revisited should counsel wish to submit a more complete analysis in any future motion to dismiss.

capacity).[6] Rule 4(e) provides that service upon individuals may be made: (1) pursuant to state law[7] or (2) by delivering a copy of the summons and complaint to the individual personally, by leaving copies of the summons and complaint at the individual's dwelling house with a person of suitable age and discretion; or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

On August 30, 2005, Plaintiff filed a "Certificate of Service" in which he personally certified that a copy of the second amended complaint was served on Governor Bush. (Dkt. 51). Plaintiff clarifies in his response to the instant motion that he filed the Certificate of Service after mailing a copy of the second amended complaint to the Governor's last known address. While a waiver of service request may be effected by first-class mail under Rule 4(d), Governor Bush is, of course, under no obligation to agree to the waiver.

Plaintiff argues that he failed to serve process because Governor Bush "turned away" Plaintiff's process server "several months ago." (Dkt. 63 at 2). Plaintiff has filed no affidavits in

---

[6] In this case, whether an official capacity suit is served as provided in rule 4(j)(2), which governs service upon the State, or Rule 4(e), which governs service upon individuals, is a distinction without a difference. Under either Rule, Plaintiff must serve Governor Bush. *See* Fed. R. Civ. P. 4(j)(2) (providing that service upon the state is accomplished by serving the chief executive officer or pursuant to state law).

[7] Florida law provides:

> Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents
>
> . . . .
>
> If the only address for a person to be served, which is discoverable through public records, is a private mailbox, substitute service may be made by leaving a copy of the process with the person in charge of the private mailbox, but only if the process server determines that the person to be served maintains a mailbox at that location. Fla. Stat. § 48.031(1)(a), (6).

support of this assertion.[8] On September 28, 2006, the Court granted Plaintiff a twenty-day extension to properly effect service, in which Plaintiff was cautioned that failure to effect service would result in dismissal of claims against unserved parties. (Dkt. 60). Because Plaintiff has failed to show any good cause as to why Governor Bush has not been served, Plaintiff's claims against Governor Bush are dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

In the alternative, Plaintiff's claims against Governor Bush are dismissed for failure to state a claim for the reasons discussed below.

***5. State Attorney Moreland***[9]

The Plaintiff has alleged three federal law violations: (1) that Moreland retaliated against him for the exercise of his First Amendment rights; (2) that Moreland, Governor Bush, and President Bush violated his freedom of expression by tampering with his letter to the Associated Press; and (3) that Moreland, Governor Bush, and President Bush violated RICO by tampering with his letter and conspiring to have him murdered. The court addresses these claims in turn, and finds that each must be dismissed for failure to state a claim.

*a. First Amendment Retaliation*

Plaintiff alleges that Moreland "penalized" Plaintiff for speaking to the *Manatee Herald-Tribune* about charges he filed against the teacher. (Dkt. 36, ¶¶ 58, 11). Specifically, Plaintiff alleges that unidentified supervisors "chastised and threatened" him for filing the charges and for speaking

---

[8] Plaintiff includes a lengthy, unclear footnote implying that his process server was part of the conspiracy against him (Dkt. 63 at 2-3, n. 3).

[9] Moreland has not contested the sufficiency of service of process against him. Although Plaintiff requested additional time to serve Moreland in his individual capacity (Dkt. 56), which was granted (Dkt. 60), Plaintiff previously filed a return of service for Moreland. (Dkt. 47).

to the press. (Dkt. 36, ¶ 14). Plaintiff resigned the next day because he was "distraught and incensed" over these events. (Dkt. 36, ¶ 15).

"To state a claim for retaliation in violation of the First Amendment, a public employee must show that her employer retaliated against her because of her speech on a matter of public concern." *Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004). The threshold inquiry is whether the employee spoke on a matter of public concern; if the employee did not, then no First Amendment claim lies. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006). In employment cases, the plaintiff must also allege that he suffered an adverse employment action, which includes "discharges, demotions, refusals to hire or promote, and reprimands." *Stavropoulos*, 361 F.3d at 619; *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005). In addition, a plaintiff may rely on a "constructive discharge" when he shows that his "working conditions were so intolerable that reasonable persons in [his] position[] would have felt compelled to resign." *Akins v. Fulton County*, 420 F.3d 1293, 1302 (11th Cir. 2005) (finding sufficient evidence of constructive discharge where plaintiffs were excluded from meetings, accused of illegal behavior, and colleagues were told not to talk to them). By contrast, "not everything that makes an employee unhappy is an actionable adverse employment action." *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1118 (11th Cir.2001).

Moreland has not argued that Plaintiff's speech was not on a matter of public concern under the new standard announced by the Supreme Court in *Garcetti*. *Cf.* Garcetti, 126 S.Ct. 1960 (holding "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Consequently, the Court assumes, for the purposes of the motion to dismiss, that comments about a teacher's use of excessive force do constitute a matter

of public concern. The next question is whether Plaintiff has adequately alleged that he suffered an adverse employment action. Plaintiff alleges that his "supervisors threatened and chastised him," and that he resigned the next day. Although Plaintiff is certainly due all inferences in his favor at this stage, the Court can not, from these bare allegations, discern whether Moreland was involved in any way in this episode. As such it is not clear how Plaintiff can sustain a claim against Defendant Moreland, which is essentially premised on his personal liability, as noted in section 3, *supra*.

To the extent Plaintiff is seeking to recover against Moreland as the ultimate supervisor of the State Attorney's office, Moreland may not be held liable solely on a *respondeat superior* theory. Rather, Plaintiff must allege that Moreland "personally participate[d] in the alleged constitutional violation or . . . there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (noting that the causal connection can be established by a history of widespread abuse that puts the supervisor on notice of the need to correct the alleged deprivation). Because Plaintiff has failed to make adequate allegations regarding Moreland's involvement in his resignation, the First Amendment retaliation claim is dismissed.[10]

*b. Abridgement of Plaintiff's Expression*

Plaintiff also alleges that Moreland, Governor Bush, and President Bush tampered with Plaintiff's letter to the Associated Press, presumably abridging his expression in violation of his First Amendment rights. Specifically, Plaintiff alleges that they acted to "manipulate the postal records of the letter in question in an effort to make it appear as if the letter never existed." (Dkt. 36, ¶ 52).

[10] The Court does not decide whether Plaintiff can state a constructive discharge claim by alleging only threats and chastisement.

Plaintiff alleges that this was done to "convince The Associated Press to ignore the story" and "to 'put out the political fire' that would certainly ignite as a result of the details contained in Plaintiff's letter.'" *Id.* In support of these conclusions, Plaintiff alleges that the USPS website indicated that the letter had arrived in Sarasota, that the website later indicated that no record of the letter existed, and that the website then showed that the letter was received. (Dkt. 36 ¶¶ 17, 18, 29). Plaintiff also alleges that the letter, which he sent on March 27, 2006, actually reached its destination on March 29, 2006. (Dkt. 36 ¶¶ 16, 30).

The Court finds that these allegations are not sufficient to state a violation of Plaintiff's First Amendment right to freedom of expression. The fact that the USPS website did not display the tracking information for Plaintiff's letter at one point in time does not simply does not suffice to state that Defendants unconstitutionally abridged Plaintiff's freedom of speech. U.S. CONST. amend. I; *cf. Brewer v. Wilkinson*, 3 F.3d 816, 825-26 (5th Cir. 1993) (noting that prisoners have a right to be free from arbitrary censorship of outgoing mail)

*c. RICO*

Finally, Plaintiff's RICO claim against the three individual defendants likewise fails. First, Plaintiff has failed to allege the necessary injury to his "business or property," a prerequisite to bringing a RICO private cause of action. *See* 18 U.S.C. § 1964(c) (providing that "[a]ny person injured in his business or property by reason of a violation of section 1962" may bring suit in any appropriate district court); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) (noting that RICO does not allow recovery for physical and emotional injuries). Plaintiff does allege that "In April 2006, the Plaintiff with the intention of starting his own law practice, ran a one-quarter

page advertisement for legal services in The Weekly Planet. . . . Shockingly, *the advertisement did not result in a single telephone call to the Plaintiff, despite the fact that* The Weekly Planet *has a circulation of thousands.*" (Dkt. 36, ¶ 19). Yet Plaintiff makes no effort to allege facts showing that this event occurred "by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

Presumably, Plaintiff's claim falls under 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *See also* 18 U.S.C. § 1962(d) (making it unlawful to engage in a conspiracy to commit a violation of subsection (c)). Plaintiff has failed to allege facts indicating the existence of "a pattern of racketeering activity." *See* 18 U.S.C. § 1961(1), (4); *U.S. v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995) (setting forth elements of a section 1962(c) RICO claim).

In order to prove a pattern of racketeering activity, the Supreme Court has emphasized that a RICO plaintiff must show related predicate acts and that those acts "*and* that they amount to or pose a threat of continued criminal activity." *Jones v. Childers*, 18 F.3d 899, 911 (11th Cir. 1994) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-43 (1989)). To the extent Plaintiff attempts to plead mail or wire fraud as a predicate act, Plaintiff has failed to make the necessary allegations that Defendants: (1) intentionally participated in a scheme to defraud plaintiff of money or property and (2) used the mails or wires in furtherance of that scheme. *Bill Buck Chevrolet, Inc. v. GTE Fla., Inc.*, 54 F. Supp. 2d 1127, 1132 (M.D.Fla. 1999). Furthermore, allegations of mail fraud, as with any allegations of fraud, must be made with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. *Durham v. Bus. Mgt. Assoc.*, 847 F.2d 1505,

1512 (11th Cir. 1988). Such specificity is entirely lacking in Plaintiff's Complaint. Plaintiff has also failed to adequately plead a second predicate act, although he alleges that "beverages the Plaintiff ordered in restaurants were served laced with narcotics" (Dkt. 36 at ¶ 24), and that this "constitutes an act involving murder." (Dkt. 55 at 2). Plaintiff surmises that because his unspecified "knowledge" posed a serious threat to the political careers of the individual defendants, they conspired to murder him with assistance of the CIA. (Dkt. 36 at ¶ 55). Plaintiff has not, however, alleged that the individual defendants were involved in the service of narcotics-laced beverages. Finally, Plaintiff has failed to allege any threat of continuing criminal activity, which was Congress's controlling concern in enacting RICO. *Jones*, 18 F.3d at 911.

Plaintiff's RICO claim is vague and conclusory, at best, and must be dismissed for failure to state a claim.

***Conclusion***

Based on the careful consideration of the parties' submissions in this matter, it is

**ORDERED AND ADJUDGED** that

1) The Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant United States of America and Defendant George W. Bush (Dkt. 39) is **GRANTED**;

2) The Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant the State of Florida (Dkt. 45) is **GRANTED**;

3) The Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant Earl Wilson Moreland, Jr. (Dkt. 54) is **GRANTED**;

4) The Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant John Ellis Bush (Dkt. 62) is **GRANTED**.

**DONE AND ORDERED** in chambers this 3rd day of November, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record